May it please the Court, Mr. Ryan. Good morning, Your Honors. I'm here today on behalf of Charles Kleinsteuber. My name is Denise Tatarin, and we're here to discuss coverage under an accidental death and dismemberment policy. There are three main issues on appeal. Whether MetLife's decision was reasonable, whether MetLife's decision is supported by substantial evidence, and whether MetLife's conflict of interest and procedural irregularities should be given significant weight, supporting breach, I'm sorry, supporting an abuse of discretion. The Kleinsteubers purchased AD&D insurance for the very purpose of obtaining protection from their own mistakes. That's what occurred here, a mistake. Dana died from the accident that led to significant blood loss, which led to cardiac arrest and her death. MetLife acknowledged at the dispositive motion hearing that it was not disputing that her death was accidental. This means that death was a direct result of the accidental injury independent of other as defined in the policy. The policy's exclusion that is at issue here applies only where death is caused or contributed to by the medical condition or treatment for the medical condition. For unknown reasons, Dana's passport, after she completed her dialysis treatment, was not closed. No one knows why. There's no evidence whether it had been closed and it was accidentally opened. There's just no evidence that explains exactly what happened after she finished her dialysis treatment. We know from the record that Mr. Kleinsteuber spoke with Dana about 25 minutes before he arrived home. She said that she was about done with the dialysis. The information in the record indicates that the dialysis treatment had ended and MetLife acknowledges that the treatment itself had ended. It was the accident of the port not being closed that caused the blood loss leading to death. Closing of the port is not part of the treatment. That was an accident on the part of Dana. Had that port been closed right away, she would not have died. So the accident is the only reason here that Dana died. It's important to keep in mind that Mr. Kleinsteuber met his burden of showing that coverage applies and that it's MetLife's burden to show that the exclusion applies taking away that coverage. I'm going to focus on three issues regarding the District Court's decision. That the District Court did not limit its review to MetLife's rationale. That the District Court's interpretation of the exclusion language is contrary to law. And that there is not substantial evidence supporting MetLife's decision. The District Court concluded that the botched dialysis treatment with no intervening steps directly contributed to the acute blood loss itself. That's at ADD 19. The District Court states this based on its belief that removing the tubing and closing off the catheter is part and parcel of dialysis treatment. The problem with this is that MetLife did not decide this. MetLife did not find this nor conclude that there was a botched dialysis treatment with no intervening steps. MetLife's final denial letter states that the port line was used for dialysis but does not state that closing off the port line is part of the dialysis. MetLife also does not state that the dialysis treatment directly contributed to either the acute blood loss or death. MetLife states that had Dana not been receiving dialysis, she would not have had a port line, the death would not have been possible. MetLife concluded that the information indicated that death was related to Dana's interaction with the dialysis machine and port line and that dialysis then caused or contributed to her death because it exposed her to the specific circumstances necessary for her to die as she did. Counsel, first of all I want to acknowledge your client's tragic loss and I think you've done a great job of outlining the legal issues before us. I do agree with you that related to is not what the language of the exclusion says, that's a broader term, but the exclusion is pretty broad. Why isn't the failure to close a port after dialysis similar in nature to an unexpected death during surgery due to complications for example, which I think would be excluded under the policy? The district court relied on the surgery cases for his analysis instead of the Kellogg line of cases which we aren't relying upon. But those cases are there's no issue that treatment itself was occurring. MetLife acknowledges that the treatment is the dialysis. The dialysis had ended. The fact that there's some apparatus at the end where she had to close it, that's not part of the dialysis. Dialysis is the cleansing of the blood. That's the treatment. But don't you have to disconnect and close the port to just go on living? That's sort of like saying you're laying on the operating table, the surgery's done, but they don't disconnect you from the anesthesia and you just keep laying there, right? Isn't it an essential task of the treatment? It's something that has to be done following treatment. Well, just like they've got to take you off the anesthesia, right? And if they left you laying there on the anesthesia forever, that would be unrelated to the surgery you're saying and your interpretation of the policy? Well, the surgery cases are distinguishable in another respect because there you have the associated risk that goes along with any surgery. What happened here was not something that is considered, would be considered a risk. I mean, normally dialysis is done in clinic. So if this would have happened in clinic, it would have been closed right away. And even in the home where she had just started it, doing it at home, had somebody been there, which normally would be the case as well, it would have been closed. In this case, the individual who was helping her at times had left. The record indicates that she had left by that time. So the act of, and again, there's no evidence to show why it was open. It could have been closed and she fell. I mean, there's just no evidence. I mean, on the surface, it appears to be kind of what happened right after she ended the dialysis, but there's no evidence that supports what actually happened. Well, I think there's actually a whole bunch of ideas of what could have happened, right? I mean, because of the dialysis itself, there's a postural orthostatic pressure issues. I mean, if you're disconnected, you're lightheaded, you stand up, you could faint, right? And if the port was still connected, you'd just pull the thing apart and you'd bleed out. Or you could have just forgotten to close it. You'd fall to the ground and you'd bleed out. I mean, and there may be other things. I mean, but there's, you know, everything is speculation as to what exactly happened to put Mrs. Kleinstuber in this position. And that's important, your comment about it, you know, nobody knowing and it's speculative, because MetLife has the burden of proof here. MetLife cannot simply review the evidence and make the best educated guess. It had the burden here of making sure the exclusion applied and that the treatment was occurring at the time of, you know, that contributed to the death. MetLife took no action to interview anyone. It didn't follow up with any questions. There was absolutely no investigation that took place. There was no medical review. Mr. Kleinstuber submitted a medical opinion from the treating physician who had known Dana for a very long time. She reviewed the evidence and gave her opinion that the treatment did not cause or contribute to her death. And that was not addressed in the appeal. There's no countering opinion as to that. And again, MetLife's analysis is what's important here, their rationale. MetLife did not state that the reason why the exclusion applies is because the closing of the port is part of the treatment. That was not stated. And in fact, if you look at the very little reference by the appeals committee in the record, it shows that what they used was the but-for type of analysis that is relevant under the Kellogg line of What came out of that summary, and again, there's no report as stated in the brief, there's no report from an appeals committee which was supposed to have reviewed this, according to MetLife. All we have is a summary by Brandon who authored the letter of his discussion with the appeal letter. And the information stated that but for the accident, death would not have occurred. So it's very clear the analysis that MetLife used, and it was not what is being argued here today. It's not what the district relied upon was counsel's statement during the hearing on summary judgment. This was not argued in MetLife's brief during the summary judgment proceeding. It's something that came The Kellogg line of cases does not focus on how close in time the illness or treatment was to the loss. What it looks at is whether, you know, it looks at that but-for analysis, whether the death would not have occurred but for the accident. And that's exactly the case here, that had Dana or someone else who was with her at the time closed that port immediately, she would not have died. It's clear that it's the accident that caused the death and not the treatment. I think that the court should also be mindful of the fact that an exclusion is to be interpreted narrowly. And so their use of the term relate to is broader than what the language states. And even if you look at the language, it should be interpreted narrowly. The cases that we have cited in our briefs indicate that it has to be a substantial contribution, the treatment has to be a substantial contribution. I'd like to reserve my last minute for rebuttal if there's no questions. All right. Thank you. Thank you, counsel. All right, Mr. Ryan, you may proceed when you're ready. Thank you, Your Honor. May it please the court, Daniel Ryan, a parent on behalf of Appellant Metropolitan Life Insurance Company. As you yourself noted, Your Honor, this is indeed a tragic set of circumstances that give rise to this lawsuit. And as I said at the district court level on summary judgment argument, our condolences to Mr. Kleinstuber and his family for their loss. The evidence in this administrative record for this ERISA governed Section 502A1B claim under an employer-sponsored benefit plan shows that Mrs. Kleinstuber tragically died as a result of improperly self-administering her home dialysis treatment for end-stage renal disease, otherwise known as ESRD. As a result of an error in connection with her dialysis treatment, the port line in her upper right chest that hooked to the dialysis machine through a tube and is used for the filtration of the blood in the dialysis treatment process was not closed or became dislodged. Resulting in acute blood loss and death. So, counsel, why isn't there an important distinction between the dialysis procedure itself and an accident that occurs outside the normal course of that procedure? If I understand your question correctly... In other words... Please. What is the treatment? The treatment here includes, as an integral part of dialysis, the access to the vascular system of Ms. Kleinstuber through the port and through the tube that is attached to the dialysis machine. As Judge Erickson... Why is there a distinction that accidents that occur during a dialysis procedure are part of the treatment? The accident... The treatment here caused or contributed to the death, Judge Grasso. Right, which requires us to define what is the treatment. The treatment here is the dialysis as well as, which includes of course, the necessity, the integral component of attaching to the port line that Ms. Kleinstuber had. And so you cannot perform the dialysis treatment without hooking up to the port and accessing the vascular system of the patient, in this case, Ms. Kleinstuber. What if she stood up, became faint, and fell over? Is that part of the treatment? Well, there's no question here, Judge Grasso, that MetLife ultimately determined that the death was accidental. And as counsel pointed out, there is plenty of evidence in the record to provide some insight as to what happened. But ultimately, that port line and the failure to close that port caused the acute blood loss and ultimately resulted in the death. But there's no question that the exclusion of... I'm not trying to be difficult. I'm trying to pinpoint the issue that I think is before us. And so we have to determine what was the treatment and when did the treatment end. And maybe you could tell me when you think treatment ended in terms of timing, because we've got very specific times in the record.  Well, I would point out to Your Honor, if I can get to the substantial evidence, which I think answers your question. What we have here is substantial evidence in the record that makes MetLife's application of the illness treatment exclusion reasonable. There are certainly some undisputed facts that support that substantial evidence. First of all, it's undisputed that Mrs. Kleinstuber had end-stage renal disease. It's undisputed that... Well, I'd like to dig a little deeper than that. So the record indicates she was discovered bleeding but still talking at 11.55 a.m. And that medical assistance was called for at 11.59 a.m. But it did not arrive until 12.23. The port remained open all during that time. Was that time period all part of the treatment? Yes. So she died during treatment? Yes. All right. I understand that that's the position you've taken. But your opponent has essentially argued that that's an unknowable fact at this point, right? And here's what she's argued. She says the port could have been closed. And if the port was closed, the port may have failed, which then would have been something different than the treatment exception. Or she may have fainted and fell or may have fallen and somehow dislodged the port. And that would be separate from the treatment, right? And what she says is the burden's on you to establish the exact nature and cause. And since nobody actually examined this port, it wasn't medically studied, there was nobody looking at it with the products analysis, that therefore you have failed to meet your burden of proving the existence of the exclusion. Why is she wrong? She's wrong for these reasons, Judge Erickson. First of all, when Mr. Kleinstuber arrived at the scene, he found his wife next to the dialysis machine covered in a pool of blood. She was still alive. And importantly, Mrs. Kleinstuber said to her husband the following, I think I may have killed myself. And she stated that she did not end the dialysis the right way. She did not end the dialysis the right way. This is a statement from the decedent herself to her husband. What she's saying is that this mishap, this medical mishap occurred while the procedure, that dialysis treatment was occurring. Mrs. Kleinstuber also told her husband, as reported to the sheriff and the medical examiner, that she pulled the port line from the machine. What does that tell you? That the dialysis treatment was ongoing when the medical mishap occurred. Judge Graz, this exclusion is in this policy because Sun Life, the employer of Mr. Kleinstuber, and the plan sponsor chose to not insure that risk, to not provide benefits for that particular risk. Why? Because medical negligence happens all the time. Not all the time, but it is not an uncommon event. And that is, this type of policy, as you noted from the record, MetLife paid the life insurance benefit fully. It denied the AD&D benefit because of this exclusion. Because there is an exclusion which says you could have an accident, but if it's due to the treatment, if the treatment of that illness is caused by or contributed to, which, as you pointed out, Your Honor, is a broader path to get to this exclusion. If it's caused by or contributed to by the treatment of the illness, it's not payable. And that's where this claim ultimately ended up. It's because of statements made by Mr. Kleinstuber, Mrs. Kleinstuber, and then Mr. Kleinstuber, as reported to the Sheriff's Department, as reported to the medical examiner, that these statements show that the dialysis was ongoing. But I ultimately get back to the fact that the dialysis cannot occur without the port. And the medical mishap occurred while the dialysis treatment was occurring. Let's explore a little bit about how broad this exclusion is. Let's suppose that she was at a dialysis clinic instead of at home. And when she left the office, she steps out in front of a bus and is killed. She would not have been killed but for the dialysis treatment. So is that within the exclusion of contributing, caused or contributed to by the treatment? Your Honor, respectfully, there are multiple variables that can enter into a whole host of different hypotheticals here. But what we have here is a situation where she didn't complete her dialysis, get up, go downstairs, and, you know, an unfortunate happenstance where she falls down the stairs or something like that. The dialysis occurred, the death occurs while she's in the room receiving self-administering dialysis. In other words, the dialysis was certainly an event that contributed to her death. So you would agree with the line of cases distinguishing between something that causes or contributes to an accident versus death? I am familiar with the cases that you're referring to, Judge Graz, and including the Kellogg case, which was cited by counsel. And there we've got a motor vehicle accident, which there was some evidence to the effect that the driver, the decedent, suffered from a seizure just prior to the accident, which caused him to, I think, run into a tree. So the question became whether or not the seizure caused the accident or caused the death. And ultimately what the court found was that the seizure didn't cause the death, but rather caused the accident. Here we've got a situation where the dialysis treatment, and a necessary component of that being the port and the connection to the dialysis machine, caused the death. Hence, the application of the exclusion in this particular case. I'd also like to point out to you that we're not talking about an insurance claim. Counsel characterized this case as being one where the client's superiors went out and purchased a policy. No, no, no, no. This group policy was requested by, paid for by, Sun Country, Inc., Mr. Kleinstuber's employer. This is a claim, this is not an insurance claim, this is a claim under Section 502A1B of ERISA, whereby the claim administrator, MetLife, was granted discretionary authority to interpret the terms of the plan and to decide eligibility for benefits. And that's exactly what, and that discretionary authority granted to MetLife causes this case to be decided as to whether or not MetLife abused that discretion. And the case law, as you well know, here in the Eighth Circuit, provides that... provides that... It just has to be a reasonable interpretation. I'm sorry? It just has to be a reasonable interpretation. It just has to be a reasonable interpretation, which means there has to be substantial evidence. The sheriff's report, the medical examiner's report, even Dr. Flynn, the treating physician letter submitted on appeal, states that the line to the port became dislodged as a result of, and it states so right in the record. But there is indeed substantial evidence that the dialysis treatment caused or contributed to the death here of Ms. Klein-Stuber. What about the argument that somehow there's a conflict of interest here? And I just think that that law is fairly well settled, but I want to give you an opportunity to address it. Under Glenn v. MetLife, of course, we've got the structural conflict of interest, where you've got MetLife both issuing the group policy to some country and deciding the claim ultimately. And so that, as case law has borne out, including Glenn, it's just one factor to be decided. We didn't see anything in the record, nor did counsel raise any substantive procedural error that occurred with regard to the claim determination here made by Metropolitan Life. Moreover, consistent with the ERISA regulations, Mr. Klein-Stuber was given the opportunity to appeal that initial claim determination. He took advantage of that. When that appeal was considered by MetLife, and this is an ameliorating circumstance that cuts against the conflict of interest, Mr. Klein-Stuber went out and retained competent ERISA counsel, who then put forth an 11-page appeal letter and 800 pages of additional documentation and information to support the claim. That appeal was given to a brand new set of fresh set of eyes within Metropolitan Life to take a fresh look. And guess what? The appeal was, it operated exactly as it was intended. Because with that second fresh look, there was a decision made by MetLife to no longer deny the claim based upon no accidental death and instead focus solely on the exclusion contained in the plan document. One maybe related question, and I think it was brought up by opposing counsel. Was there evidence in the record to support that MetLife submitted Mr. Klein-Stuber's appeal to an appeals committee? Yes. And what is that? Absolutely, Your Honor. And it's cited in our brief. And I noted that in oral argument opposed to the brief, Ms. Tatarin did in fact recognize that it was submitted to the appeals committee. And there is a citation in our brief, and I'm going to, I will try to find that precise because I anticipated your question. That is at 160 RDoC 22-1 at 113. Can you repeat the last part of that? At 113. Okay. It was, there is a claim note, Judge Graz, wherein the claim manager who was handling the appeal took it to the appeals committee and conferred with the appeals committee prior to rendering, issuing the final determination relative to this claim. Thank you. I see that I've run out of time. I'm happy to take any further questions that you might have. Thank you very much for your time, Your Honors. Thank you, Counsel. Ms. Tatarin, you may proceed in rebuttal. I just would like to make a few quick points. One, I think it's important to look at the transcript of when counsel provided the argument that treatment doesn't end until the apparatus is taken off. Counsel stated that treatment doesn't stop when the machine isn't turned off. He said it stops when you have disengaged the necessary parts of the dialysis machine. It's clear that that took place here. There's no evidence that any part of the dialysis machine was still hooked up to her. That's at transcript 20. I'd also like to say that there's a distinction here of cases where it's a medical mishap because that is typically where a clinic or a physician is performing part of that treatment. It's the providers who make a medical mishap. I see my time went by very quickly. Thank you, Your Honors. Thank you.